SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
PAUL S. COWIE, Cal. Bar No. 250131
pcowie@sheppardmullin.com
JOHN D. ELLIS, Cal. Bar No. 269221
jellis@sheppardmullin.com
ANDREA L. ISAACS, Cal. Bar No. 323788
aisaacs@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947

Attorneys for Defendant SWIFT TRANSPORTATION CO. OF ARIZONA, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| RYAN CARTER an individual, on behalf of himself and others similarly situated,,<br><br>Plaintiff,<br><br>v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,,<br><br>Defendants. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>*[Removed from San Bernardino Superior Court, Case No. CIV DS 2005307]*<br><br>Complaint Filed: February 21, 2020<br>Trial Date: None |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HER ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendant Swift Transportation Co. of Arizona, LLC (hereinafter “Defendant”) hereby removes the above-referenced action from the Superior Court of the State of California for the County of San Bernardino, Case No. CIVDS2005307, to the United States Court for the Central District of California. Removal is based on the Class Action Fairness Act (“CAFA”). This Court has original subject matter jurisdiction over Plaintiffs’ lawsuit under 28 U.S.C. sections 1332(d), 1441, 1453 and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## I. STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

1. On February 18, 2005, the Class Action Fairness Act ("CAFA") was enacted. In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

2. This Court has jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: 1) the proposed class contains at least 100 members; 2) the defendant is not a state, state official or other governmental entity; 3) the total amount in controversy for all class members exceeds $5,000,000 and; 4) there is diversity of citizenship between at least one class member and one defendant. Each of these conditions were satisfied at the time this action was initiated and now at the time of removal.

3. CAFA's minimal diversity requirement is satisfied when: 1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens, 2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or 3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

4. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II. CLAIMS AND PROCEDURAL HISTORY

5. On or about February 21, 2020, individually and on behalf of all other purportedly similarly situated non-exempt, hourly employees Plaintiff Ryan Carter ("Plaintiff") filed this action against Defendant in the Superior Court for the County of San Bernardino, entitled *Ryan Carter v. Swift Transportation Co. of Arizona, LLC*, Case No. CIVDS2005307 (the "Complaint").

6. A copy of the Complaint, Summons, Amended Summons, Civil Cover Sheet, and Certificate of Assignment, were served on Defendant in the State Court action on March 6, 2020. True and correct copies of these State Court pleadings and papers are attached hereto as **Exhibits A-E**, respectively. A true and correct copy of the Service of Process Transmittal Form is attached hereto as **Exhibit F**.

7. On or about May 6, 2020, the Court, on its own motion, continued the Complex Case Management Conference to August 13, 2020. Notice of the Court's continuance has not yet been served.

8. On or about June 23, 2020, Defendant filed its Answer to the Complaint. Attached hereto as **Exhibit G** is a true and correct copy of Defendant's Answer to Plaintiff's Complaint (conformed copy received back from San Bernardino Superior Court on July 7, 2020).

9. Plaintiff's putative class claims arise from allegations that Defendant failed to provide sufficient compensation to persons employed as truck drivers in California when it allegedly: (1) failed to pay the minimum wage under Labor Code §§ 204, 1194,1197, 1197.1; (2) failed to pay wages under Labor Code § 1194; (3) failed to pay final wages at termination of employment under Labor Code § 203; (4) failed to reimburse for necessary business expenses under Labor Code § 2802; and (5) engaged in unfair, unlawful, or fraudulent business practices in violation of Business and Professions Code § 17200 et. seq. Complaint, ¶¶ 12-21.

10. Plaintiff's Complaint is styled as a putative class action under California Code of Civil Procedure section 382. Plaintiff's Complaint defines the putative class as: "all current and former employees within the State of California who at any time four (4) years prior to the filing of this lawsuit are or were

employed as by Defendants."[1] *Id.* at ¶ 1. Plaintiff's Complaint also alleges the following five subclasses:

> Subclass 1. Minimum Wages Subclass All Class Members who were not compensated for all hours worked for Defendants at the applicable minimum wage.
>
> Subclass 2. Wages Subclass All Class Members who were not compensated for all hours worked for Defendants [*sic*] at the required rates of pay.
>
> Subclass 3. Expense Reimbursement Subclass All Class Members who incurred necessary and reasonable expenses in connection with performing their job duties for Defendants and who were subject to a policy and or practice under which such expenses were not reimbursed.
>
> Subclass 4. Termination Pav Subclass All Class Members who within the applicable limitations period either voluntarily or involuntarily separated from their employment and were subject to Defendants policy and or practice of failing to timely pay wages upon termination. ["Proposed Former Employee Subclass"]
>
> Subclass 5. UCL Subclass All Class Members who are owed restitution as a result of Defendants business acts and practices to the extent such acts and practices are found to be lawful deceptive and/or unfair.

*Id.* at ¶ 22 (a-e).

11. A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of California for the County of San Bernardino. **Exhibits A-G** contain all "process, pleadings, and orders" served on Defendant in accordance with 28 U.S.C. § 1446(a). No other proceedings have been held in this action.

## II. JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT IS SATISFIED

12. Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin*

[1] For purposes of removal, Defendant limits its understanding of the class to only include hourly truck drivers terminaled in California, like Plaintiff, over the last four years. Complaint, ¶ 4

*Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (A notice of removal "need not contain evidentiary submissions."). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exists." *Id*. at 554. Evidence is required "***only*** when the plaintiff contests, or the court questions, the defendant's allegation." *Id*. (emphasis added); *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (courts may not remand where notice of removal plausibly alleges the basis for removal, without giving the defendant an opportunity to prove the jurisdictional requirements are satisfied).

13. The United State Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id*. Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 ***broadly in favor of removal***…" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015)(emphasis added); *see also Ibarra v. Manheim Invs., Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively."). In *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923 (9th Cir. 2015), the Ninth Circuit held that under *Dart Cherokee*, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'" *See also Moppin v. Los Robles Reg'l Med. Ctr*., 2015 U.S. Dist. LEXIS 129574, *4 (C.D. Cal. 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

**A. The Case Is A Proposed Class Action With A Putative Class Of At Least 100 Members, And Defendant Is Not A State, State Official, Or Government Entity**

14. This action has been styled as a California class action under California Code of Civil Procedure section 382. Complaint, ¶ 10 ("Action is brought as a Class Action on behalf of similarly situated Class Members of Defendants pursuant to California Code of Civil Procedure 382. . ."). California Code of Civil Procedure section 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

15. 28 U.S.C. § 1332(d)(5) excludes from CAFA jurisdiction cases in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or…the number of members of all proposed plaintiff classes in the aggregate is less than 100."

16. Defendant is neither a state, a state official, nor a government entity.

17. On the basis of its own investigation, Defendant has determined, and hereby alleges, that there are more than 100 persons who are or were employed by Defendant as truck drivers, paid on an hourly basis, and assigned to California terminals at some point during the four years prior to the filing of Plaintiff's Complaint. Therefore, Plaintiff's proposed class consists of at least 100 members both now at the time of removal and at the institution of this civil action.

**B. Minimum Diversity of Citizenship Exists Here**

18. CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

19. Plaintiff's Complaint alleges that Plaintiff "was employed by Defendants as [*sic*] truck driver within the State of California, based out of Defendants facility in San Bernardino County, California." Complaint, ¶ 4. Plaintiff's Complaint further alleges that the putative class consists of "all current and former employees within the State of California who at any time four (4) years prior to the filing of this lawsuit are or were employed as by Defendants." *Id*. at ¶ 2.

20. Although no *evidence* of domicile is required at the notice of removal stage (*cf. Dart Cherokee*, 574 U.S. at 84), "[p]roof of residence in a state is usually thought *prima facie* evidence of domicile." *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see also Anderson v. Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary…"); *see also Barbosa v. Transp. Drivers, Inc.*, 2015 WL 9272828, at *2 (C.D. Cal. 2015) ("a person's residence is *prima facie* evidence of his or her place of domicile for purposes of diversity jurisdiction") (quoting *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012)). Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013). Regardless, allegation of the parties' citizenship is sufficient for removal. *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223 (9th Cir. 2019).

21. Further, where there are no allegations of citizenship of certain parties in the complaint, a removing party may introduce "objective facts" in support of removal that would tend to show the domicile or citizenship of a party in a particular state. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of

spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes”).

22. Here, the Complaint affirmatively discloses that Plaintiff “has resided in California and during the time period relevant to this Complaint.” Complaint, ¶ 4. Accordingly, Plaintiff is now at the time of this removal, and was at the institution of this civil action, a citizen of California for purposes of determining diversity. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

23. Because Plaintiff resides in California, worked in California for Defendant, and because Plaintiff’s proposed class is defined to include “current and former employees within the State of California”, Defendant may rely on the foregoing presumptions to establish that Plaintiff, and at least some of the putative class members, are now at the time of removal, and were at the institution of this civil action, domiciled in California and therefore citizens of California.

24. <u>Defendant’s Citizenship:</u> Defendant is now at the time of this removal, and was at this institution of this civil action, a limited liability company organized under the laws of Delaware. For diversity purposes, a limited liability company is deemed to be a citizen of the state of each of its members. *See, e.g., Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Defendant’s sole member is, and was at the institution of this civil action, Swift Transportation Co., LLC (“Swift Transportation”). Swift Transportation is, and was at the institution of this civil action, a limited liability company organized under the laws of Delaware whose sole member is now, and was at the institution of this civil action, Knight-Swift Transportation Holdings, Inc. (“Knight-Swift”). Knight-Swift is now, and was at

the institution of this civil action, a corporation incorporated under the laws of Delaware.

25. As a corporation, Knight-Swift is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

26. In *Hertz Corp. v. Friend*, 559 U.S. 77, 92-3 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principle place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id*. at 93.

27. Under the foregoing standard, Knight-Swift is a citizen of Arizona and Delaware for purposes of removal.

28. Knight-Swift is incorporated in the State of Delaware and maintains its corporate headquarters in Phoenix, Arizona. Phoenix, Arizona is where the vast majority of the Knight-Swift's corporate and executive officers are employed. Phoenix, Arizona is also where the actual center of direction, control and coordination for Knight-Swift takes place. Accordingly, Knight-Swifts principal place of business is, and was at the institution of this civil action, in the State of Arizona. *See* 28 U.S.C. § 1332(c)(1).

29. In accordance with the foregoing, Defendant is now at the time of removal, and was at the time of the institution of this civil action, a citizen of Delaware and Arizona (and not a citizen of California), and Plaintiff and some of the putative class members are now at the time of removal, and were at the institution of this civil action, citizens of California (and not citizens of Arizona or Delaware). Thus, the minimum diversity requirement under CAFA is satisfied.

30. Doe Defendants: Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal). Thus, the existence of Doe defendants 1 through 50, does not deprive this Court of jurisdiction.

31. In accordance with the foregoing, Plaintiff is a citizen of the State of California, while Defendant and its sole member Swift Transportation are citizens of the States of Arizona and Delaware (which is the principal place of business and state of incorporation, respectively, for Knight-Swift). Thus, the minimum diversity requirement under CAFA is satisfied.

**C. The Amount In Controversy Exceeds The $5,000,000 Requirement Under CAFA**

32. Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of himself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

*33.* "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014).

34. Moreover, a defendant **need not set forth evidence** establishing the amount in its notice of removal. *Id*. A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *See Dart Cherokee*,

574 U.S. at 89 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations").

35. CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the *aggregate* amount in controversy for all class members exceeds five million dollars ($5,000,000.00). *See* 28 U.S.C. § 1332(d). By demonstrating that the actual amount in controversy exceeds the threshold, Defendant does not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will recover anything.

36. "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe…") (aff'd by 631 F.3d 1010 (9th Cir. 2011)).

37. In the Ninth Circuit, the amount in controversy is determined "at the time of removal." *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). In *Chavez v. JPMorgan Chase*, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat the amount in controversy is assessed at the time of removal does *not* mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." *Chavez*, 888 F.3d at 417 (original emphasis). *Chavez* held that "the amount in controversy is not limited to damages

incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id.* at 414-15. These principles were affirmed again by the Ninth Circuit in *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018).

38. Plaintiff's pleadings in this action fail to affirmatively disclose the amount in controversy or information from which Defendant could readily ascertain the amount in controversy without independent investigation and analysis. Plaintiff's Complaint is "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the meaning of *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013).

39. Defendant provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction. Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.

40. Defendant understands Plaintiff's definition of the putative class to include all drivers employed by Defendant, who were paid on an hourly basis, and terminaled in California at any time during the period beginning four years before the filling of this action. Defendant's understanding is based on Plaintiff's allegation that Plaintiff "was employed by Defendants as [*sic*] truck driver within the State of California based out of Defendants facility in San Bernardino County, California." Complaint, ¶ 4.

41. Defendant independently determined based on its own business records that the Plaintiff's proposed putative class, is comprised of approximately 2,011 hourly paid truck drivers who are/were employed by Defendant during the four-year period prior to the filing of the Complaint, and who are/were terminaled in California.

42. Defendant independently determined based on its own business records that the proposed putative class were paid an average hourly rate of $17.62 during the four-year period prior to the filing of the Complaint.

43. Defendant independently determined based on its own business records that Defendant employed on average, 820 putative class members at any given time during the four years prior to the filing of the Complaint.

44. Defendant independently determined based on its own business records that between February 21, 2017 to the present, approximately 1,402 members of Proposed Former Employee Subclass.

45. Defendant independently determined based on its own business records that the Proposed Former Employee Subclass worked an average rate of $17.95 per hour.

**Minimum Wage Claims**

46. Plaintiff alleges that he and the Proposed Minimum Wage Class were not paid minimum wages in accordance with California law pursuant to California Labor Code section 1197 because Defendant required proposed class members to perform work "off the clock." *See* Complaint, ¶¶ 12 and 14-17. Specifically, "Class Members would work before their scheduled shifts began and also after their scheduled shifts ended but they were required to clock in and clock out of the timekeeping system at their scheduled shift times instead of the actual hours they worked. Specifically pre shift off the clock work included processing documents before leaving the distribution center and post shift off the clock work also included Class Members processing documents such as bills and delivery sheets after they got

back to the distribution center." *Id.* at ¶ 12. Plaintiff further alleges that Defendant "required Plaintiff and the Class Members to perform [*sic*] work attendant at the beginning and ending of their work shifts and also periods of time for which was not recorded due to Defendants' unlawful policies and procedures." *Id.* at ¶ 15

47. Cal. Labor Code § 1194 states that an employee receiving less than the legal minimum wage is entitled the recover the amount owed in a civil action.

48. For these reasons, Plaintiff's claims for unpaid minimum wages cannot be calculated with any reasonable certainty given the lack of detail contained within Plaintiff's Complaint. California's minimum wage between 2016 and the present grew from $10.00 per hour to $13.00 per hour. Historically, drivers worked approximately 50 weeks a year and 5 days week.

49. Defendant is justified in using a violation rate of 5 hours per week per driver based on the nature of Plaintiff's allegations that Defendant "had a consistent policy of misstating Class Members time records and failing to pay Class Members for all hours worked." Complaint, ¶ 37. Plaintiff also alleges that Defendant "regularly failed to pay minimum wages to Class Members to their detriment. Defendants uniform pattern of unlawful wage and hour practices manifested without limitation applicable to the Class as a whole as a result of implementing a uniform policy and practice that denied accurate compensation to Class Members as to minimum wage pay. *Id; see Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation"); *Vikram v. First Student Management, LLC*, Case No. 17-cv-04656-KAW, 2017 WL 4457575, at *4 (N.D. Cal. Oct. 6, 2017) (holding that where Plaintiff alleged that Defendant required putative class members to work off the clock for each pay period, Defendant may assume 100% violation rate for purposes of removal).

50. Defendant independently determined based on its own business records and on the allegations within Plaintiff's Complaint that the amount in controversy for minimum wages damages is at least $8,200,000based on 5 hours of off the clock work per week per driver (average 820 daily putative class members x $10.00 lowest minimum hourly rate x 5 hours of off the clock work per workweek x 50 weeks x 4 years).

51. Therefore, the amount in controversy for Plaintiff's minimum wage claim alone also exceeds the jurisdictional minimum of $5,000,000.

52. Plaintiff also seeks to recover liquidated damages for Defendant's allegedly willful failure pay minimum wages in violation of Labor Code § 1194.2, and thus, further increasing the amount in controversy beyond the jurisdictional minimum of $5,000,000. *See* Complaint, ¶¶ 46-47.

53. Moreover, the amount in controversy for Plaintiff's minimum wage will continue to increase through the date of trial.[2] *Chavez v. JPMorgan Chase*, 888 F.3d 414-415 (9th Cir. 2018) ("the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."

**Waiting Time Penalties**

54. Under Cal. Labor Code § 203, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or

---

[2] Defendant estimates that trial is at least two years away. Thus, the amount in controversy will further increase by at least $4,100,000 for the minimum wage claim alone.

until an action therefor is commenced; but the wages shall not continue for more than 30 days."

55. Plaintiff alleges that Defendant willfully failed to pay wages to the Proposed Former Employee Subclass in accordance with Cal. Labor Code §§ 201 - 203. Complaint at ¶ 63. Pursuant to Cal. Labor Code § 203, Plaintiff seeks waiting time penalties on behalf of himself and the Proposed Former Employee Subclass members, "for up to thirty 30 days from the date they were due." *Id.* at ¶ 64.

56. The statute of limitations for Plaintiff's waiting time penalties claim is three years. Cal. Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1390 (2010). Based on the three year statute of limitations, there were 1,402 alleged members of the Proposed Former Employee Subclass whose employment terminated in the relevant time frame alleged by Plaintiff, between February 21, 2017 and the present.

57. Therefore, Defendant independently determined based on its own business records and on the allegations contained within Plaintiff's Complaint that the amount in controversy for waiting time penalties damages (exclusive of interest) is $6,039,816 (1,402 former employees x $143.60 per day [8 hours per day x $17.95 average rate of pay] x 30 days).

58. Therefore, the amount in controversy for Plaintiff's waiting time penalties claim alone also exceeds the $5,000,000 jurisdictional amount required under CAFA.

**<u>Amount In Controversy For Attorneys' Fees</u>**

59. Plaintiff also alleges an entitlement to attorneys' fees. Complaint, Relief Requested at ¶ 16. Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees are also included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). In *Fritsch*, the

Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must also be considered in the amount in controversy. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 -796 (9th Cir. 2018).

60. Courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. 2018); *Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, at *2 (N.D. Cal. 2019); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"). Thus, an additional minimum amount of $3,641,954 must be included in the amount in controversy ([$8,200,000 alleged minimum wage claim + $6,039,816 alleged waiting time penalties] x 25% = $3,559,954).

61. The same amount for alleged attorneys' fees is placed in controversy using the "lodestar" method of fee computation. *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"); *see also Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D. Cal. 2013) ("California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent").

62. For all of the forgoing reasons, Defendant alleges that the amount placed in controversy by Plaintiff is significantly greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action. The amount in controversy requirement for CAFA is therefore satisfied.

**D. NO CAFA EXCEPTIONS APPLY**

63. CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(4). However, none of these exceptions are applicable here. The party resisting removal has the burden of proving the existence of a CAFA exception. *King v. Great Am. Chicken Corp.*, 903 F.3d 875, 878 (9th Cir. 2018).

64. The first is a discretionary exception based on the number of putative class members found in the state where the action was filed. *See* 28 U.S.C. § 1332(d)(3). However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed." Here, the action was originally filed in California and, as noted above, Defendant is not a citizen of California. Thus, this exception does not apply.

65. Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed. However, these exceptions too, only apply where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed." *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and 1332(d)(4)(B). Given that this action was originally filed in California, and Defendant is not a California citizen, these exceptions also do not apply.

**IV. TIMELINESS OF REMOVAL**

66. Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed–during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

67. When a complaint is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the first 28 U.S.C. § 1446(b)

thirty-day window does not begin to run. *Id.* at 692-695. "[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin." *Id.* at 695. This reasoning was more recently confirmed in *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."

68. A complaint is "indeterminate" when "it is unclear from the complaint whether the case is removable, *i.e.*, the [jurisdictional facts are] unstated or ambiguous." *Harris*, 425 F.3d at 693. Plaintiff's Complaint does not affirmatively allege or otherwise state the citizenship of Plaintiff nor does it affirmatively allege or otherwise state that the amount in controversy exceeds $5,000,000. Further, it is not discernable from the face of the Complaint that more than $5,000,000 was placed in controversy. The Complaint alleges causes of action for (1) failure to pay the "appropriate minimum and regular rates;" (2) failure to pay all wages at termination (3) violation of Labor Code § 203; (4) failure to reimburse necessary business expenses; and (5) unfair competition. Complaint, ¶¶ 11-12 and 14-21. There is nothing in the Complaint however setting forth the amount of damages recoverable for the alleged legal violations, nor the number of times the violations allegedly occurred, nor the number of people they allegedly affected. *See* Complaint. Rather, the Complaint simply demands damages and other remedies in an unstated amount. *See* Complaint, Relief Requested.

69. Under *Harris*, the Court must not "inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather…the court [may] rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that

those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Harris*, 425 F.3d at 695 (quoting, *Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997). Thus, Plaintiff's Complaint is "indeterminate" and its service does not trigger the first 28 U.S.C. § 1446(b) thirty-day window to remove. *See Roth*, 720 F.3d at 1125 (holding that complaint was "indeterminate" when "[i]t did not reveal on its face that…there was sufficient amount in controversy to support jurisdiction under CAFA."); *see also Calkins v. Google, Inc*., 2013 U.S. Dist. LEXIS 97829, 2013 WL 3556042 at *2-3 (N.D. Cal. 2013) (holding that service of complaint did not trigger thirty-day window when amount in controversy was not affirmatively stated, even where defendant could have deduced the amount in controversy from documents in its possession).

70. As of the date of this filing, the parties have not exchanged any subsequent papers determinative of the jurisdictional amount in controversy in this matter. Where neither the initial pleading nor "other paper" discloses the grounds for removal, a defendant may remove at any time after it independently learns of the facts supporting removal jurisdiction. *Roth*, 720 F.3d at 1125. Defendant, based on its investigation and internal records, has since been able to determine that the amount in controversy based on the allegations in Plaintiff's Complaint, well exceeds the $5,000,000.00 threshold. Thus, like in *Roth*, the facts alleged in this notice support that removal is both proper and timely.

## V. JOINDER

71. Defendant is not aware of any other defendant that exists and who has been named in the Complaint or who has been served with a summons and the Complaint. The only defendants named in Plaintiff's Complaint are Defendant and fictitiously named Doe Defendants, whose presence is disregarded for purposes of removal.

## VI. VENUE

72. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), and 1391.

## VII. NOTICE TO PLAINTIFFS AND STATE COURT

73. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of San Bernardino.

74. In compliance with 28 U.S.C. section 1446(a), true and correct copies of all “process, pleadings, and orders” from the state court action served on Defendant or filed by Defendant are attached hereto as **Exhibits A through G**.

WHEREFORE, having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of San Bernardino to the United States District Court for the Central District of California, Eastern Division.

Dated: July 13, 2020

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ *Andrea L. Isaacs*

PAUL S. COWIE
JOHN D. ELLIS
ANDREA L. ISAACS

Attorneys for Defendant SWIFT TRANSPORTATION CO. OF ARIZONA, LLC